UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff-Appellee,<br><br>　　　v.<br><br>ANTONIO BLAZQUEZ,<br><br>　　　　　Defendant-Appellant. | CASE NO. 1:15-CR-0077 AWI<br><br>ORDER ON APPEAL OF CONVICTION<br><br>(Doc. No. 28) |

　　　Appellant Antonio Blazquez ("Blazquez") appeals his conviction for violation of 36 C.F.R. 2.34(a)(1), disorderly conduct by engaging in fighting or threatening behavior or violent behavior while in Yosemite National Park.[1]  On February 26, 2015, following a bench trial, Magistrate Judge Seng sentenced Blazquez to a mandatory $10 assessment and 3 days in jail with credit for time served.  Blazquez now raises three grounds for review -- sufficiency of the evidence, improper denial of a Rule 29 motion for acquittal, and improper consideration of evidence while denying the Rule 29 motion.  For the reasons that follow, the Court will affirm Blazquez's conviction.

**LEGAL FRAMEWORK**

　　　An appeal from a criminal conviction imposed by a Magistrate Judge lies with a "judge of the district court and must first be brought in the district court before prosecution in the court of appeals."  United States v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993); see 18 U.S.C. § 3402.  The

---

[1] Blazquez was charged with violations of 18 U.S.C. § 113(a)(5) (simple assault) and 36 C.F.R. § 2.34(a)(1) (disorderly conduct).  Blazquez was acquitted of the simple assault charge as part of the Magistrate Judge's ruling on a Rule 29 motion for acquittal.

1  district court's review of the magistrate judge's judgment is governed by the same standards as an
2  appeal from a judgment of a district court to the court of appeals. Fed. R. Crim. P. 58(g)(2)(D);
3  United States v. Stanton, 501 F.3d 1093, 1099 (9th Cir. 2007); United States v. Mancia, 720
4  F.Supp.2d 1173, 1178 (E.D. Cal. 2010).  In other words, the district court "is to apply the same
5  scope of review as a United States Circuit Court of Appeals would apply in considering an appeal
6  of a judgment from a United States District Court." Mancia, 720 F.Supp.2d at 1178.

## TRIAL PROCEEDINGS[2]

*Rangers' Testimony*

At the February 26 bench trial, the United States called as its only witnesses Yosemite Park Rangers Thomas Healy ("Healy") and Matthew Phillipson ("Phillipson").

The rangers testified that on February 15, 2015, they were in a patrol vehicle driving in Yosemite Valley approaching Stoneman Meadow. See TR1 at 14:25-15:6; 72:15-21. Phillipson was driving and Healy was in the passenger seat. See id. at 15:7-12; 72:22-23. Although some other cars were driving in the area, the traffic was minimal.[3] See id. at 15:19-22. As the patrol vehicle stopped and went through an intersection towards Stoneman Meadow, Healy noticed a camper van with a big, wide, glass windshield parked on the side of the road facing towards the rangers about 35 to 40 yards away.[4] See id. at 16:1-25; 40:1-4. There were no vehicles parked in front of the van, and although there were some vehicles parked behind the van, those vehicles were not close. See id. at 16:13-18. It was a sunny day, and there was a glare hitting the right side of the windshield (from Healy's perspective), but Healy could still see inside the van. See id. at 18:13-25, 40:9-15. The van appeared dimly lit through the windshield, and Healy was able to see

---

[2] The record for the entirety of proceedings on February 26, 2015, is composed of three separate transcripts. The transcript of proceedings from 9:16 a.m. to 12:05 p.m. will be referred to as "TR1," and is Document Number 24 in case 1:15cr0077 AWI. The transcript of proceedings from 1:30 p.m. to 3:337 p.m. will be referred to as "TR2," and is Document Number 22 in case 6:15-mj-00001 MJS. The transcript of proceedings from 3:37 p.m. to 4:30 p.m. will be referred to as "TR3," and is Document Number 20 in case 1:15-cr-0077 AWI.

[3] At some point, Healy also observed "a jogger or two or some people walking by." TR1 at 64:12-15.

[4] Healy testified that Yosemite National Park is a public park that is open to the general public 365 days a year and 24 hours a day. See TR1 at 68:21-69:3. Healy also testified that the road they were traveling and on which the van was parked was a public road, and that the van was legally parked. See id. at 69:4-9.

2

two silhouetted figures. See id. at 53:23-54:1. Healy observed two occupants sitting in the van, a driver and a passenger. See id. at 16:21-17:2. Healy observed the van's driver rapidly extend his/her arm and make contact with the passenger. See id. at 17:5-7. Healy saw the passenger's upper torso and head move backwards from the extending arm as the arm made contact. See id. at 17:8-11. Healy then observed the van rock from side to side. See id. at 16:13-19. Healy then observed a rapid exchange of moving arms going back and forth between the occupants, the occupants then appeared to stand up, and the driver appeared to push the passenger further into the van. See id. at17:21-18:8. Healy was unable to identify who was actually in the driver seat, and did not relay any gender information to Phillipson. See id. at 43:8-14; TR2 at 17:22-18:3.

As Phillipson was driving, Healy said, "It looks like somebody just got hit in the van," and that it looked like two kids almost hitting one another or jumping back and forth. Id. at 19:1-15. Phillipson recalled Healy asking, "Are those kids fighting in the van?" Id. at 74:7-12; see also id. at 51:10-16. Phillipson then looked into the van, and in between the driver's seat and passenger seat, he saw someone standing with their back to the rangers appearing to deliver blows. See id. 74:13-20. Phillipson couldn't tell if the person delivering the blows was a male or female, but the person appeared to be hunched over. See id. at 74:21-75:1; TR2 at 17:14-20. Phillipson could see that person's shoulders moving back and forth, which indicated to him that somebody was being struck. See TR1 at 75:1-3. Phillipson did not see a person clearly striking another person or actual physical contact between the occupants. See id. at 85:8-9, 101:9-12; TR2 at 4:6-9.

Phillipson passed the van, turned around, and parked behind the van. See id. at 19:16-24; 75:15-20. Healy exited the patrol car and approached the van on the right side. See id. at 20:1-2. Healy noticed that the van had two back windows and a side door on the right was open. See id. at 20:11-17. As Healy approached the van, he heard a male and female voice yelling in Spanish and the van was rocking back and forth. See id. at 21:2-18. Although Phillipson noticed the open door, he was unable to hear anything coming from the van. See id. at 76:2-10. Healy looked in the open door towards the back of the van and saw the back of a male, i.e. Blazquez, who was crouched/bent forward and moving his arms rapidly up and down and side to side. See id. at 22:1-9; 42:15-20. Healy testified that Blazquez was standing over another person who was seated on

3

the floor against the back bench seat. See id. at 23:3-4, 24:19-6. Healy believed that Blazquez was swinging his arms and hitting the other person, who was Blazquez's girlfriend Aymara Arcos. See id. at 8:16-17, 23:13-18. Healy told Phillipson that it looked like Blazquez and Arcos were pushing each other. See id. at 55:21-56:15, 59:23-25, 95:13-16.

Healy ordered Blazquez to stop and get out of the van, which Blazquez did. See id. at 24:7-18. Arcos then got off of the floor, sat on the back bench seat, and made eye contact with Healy. See id. at 24:16-21. Healy ordered Arcos out of the van. See id. at 25:5-6. Once Arcos exited the van, Healy was directing Blazquez and Arcos's movements, and because they appeared to be yelling at each other in Spanish, Healy directed Blazquez to a nearby fence and Arcos to the front of the van. See id. 25:7-25; 64:20-66:1. Blazquez was approximately 6' 0" tall, and Arcos was approximately 5' 2". See id. at 82:7-13.

Phillipson interviewed Arcos. See id. at 77:5-6. Arcos was upset and agitated, and Phillipson observed what he thought was swelling under her eyes and possibly on her cheek bones and nose. See id. at 77:9-18. Phillipson admitted that he had not seen or met Arcos prior to the encounter, and did not know how she typically appeared. See TR2 at 12:15-24. Phillipson took photographs of Arcos, despite Arcos refusing permission. See TR1 at 79:11-14; TR2 at 16:6-15. Phillipson testified that Arcos did not indicate that she was in fear prior to the rangers' arrival, and she did not seem grateful for the rangers' arrival, rather she seemed frustrated and did not want the rangers there. See TR1 at 92:19-93:12. Arcos did not ask for help. See id. at 87:9-11. Arcos denied that Blazquez had hit her. See TR2 at 8:15-17.

Phillipson also spoke with Blazquez. See TR1 at 87:24-88:1. Blazquez did not say that he pushed, hit or threatened Arcos, but consistently said that he and Arcos were having a private argument. See id. at 88:1-9.

*Rule 29 Motion*

After the rangers finished their testimony, Blazquez moved for an acquittal under Rule 29. TR2 at 25. The Magistrate Judge tentatively indicated that he had significant concern about the assault charge, but otherwise deferred ruling on the Rule 29 motion. See id. at 39. The trial continued and Blazquez was called to give testimony. See id.

*Blazquez's Testimony*

Blazquez testified that he and Arcos are from Spain and were in Yosemite as part of a road-trip of the west coast of America. See id. at 40:24-41:25. Blazquez and Arcos for most of two months had been traveling, sleeping, and living out of a camper van that they had purchased in Canada. See id. at 42:3-15, 44:20-25. Although the van has enough space for their possessions, there was not a lot of space for them. See id. at 42:16-43:7. The van experienced many mechanical problems that drained Arcos and Blazquez's finances. See id. at 45:1-25, 48:21-25.

By the time Blazquez and Arcos arrived in Yosemite on February 12, they were experiencing stress. See id. at 45:20-47:13. While at Yosemite, the couple celebrated Arcos's 30th birthday and Valentine's Day, but because of budget problems, the celebration consisted mostly of hiking and being in Yosemite. See id. at 47:21-50:6. The fact that there was not more of a celebration caused frustration between Arcos and Blazquez. See id. On the early morning of February 15, Arcos and Blazquez went to sleep at 2 a.m. See id. at 50:7-13.

Blazquez woke up on February 15 at 8 a.m. See id. Blazquez began doing chores around the van, and then drove out of the crowded campground in order to find a spot that was less noisy. See id. at 51:1-23. It only took two minutes before Blazquez saw Stoneman Meadow, where it was sunny and quiet, and there was no one else parked in the area. See id. at 52:1-24, 82:11-15. Although a car would occasionally drive past, no cars were near and nobody was around. See id. at 53:1-3. As Blazquez was driving to the meadow, Arcos sat in the passenger seat and they began to argue about which of the day's chores and activities should be done first. See id. at 53:5-20, 56:2-11, 73:9-14. After parking the van, Blazquez got up from the driver's seat and both Blazquez and Arcos moved around. See id. at 66:23-25, 81:14-18. Blazquez admitted that he raised his voice with Arcos, but did not believe that someone outside of the vehicle would have heard him, and he did not intend to disturb anyone. See id. at 56:12-25. Blazquez believed that he and Arcos were alone, and he did not realize that a ranger was present until he heard the ranger's voice. See id. 57:1-9.

Blazquez was standing in front of the van's side door when he heard Healy. See id. at 58:8-12. Blazquez was startled to see someone at the van, let alone a ranger. See id. at 59:5-17.

1  Blazquez followed Healy's instructions to exit the van, and Arcos followed after she was asked to
2  exit. See id. 59:18-25. When Healy spoke, Blazquez and Arcos were still arguing. See id. at
3  67:6-8. Blazquez believed that he was near the kitchen area of the van and Arcos was by the sofa,
4  and he has no recollection of her being on the floor of the van. See id. at 66:21-67:5.

5  Outside of the van, Blazquez and Arcos spoke to each other in Spanish about what was
6  happening, and Blazquez told Arcos to be calm, not to worry, and that everything would be fine.
7  See id. at 60:3-15, 61:8-9. Blazquez testified that he and Arcos were not arguing or being loud
8  after they exited the van. See id. 60:16-20, 61:4-7. Blazquez explained that the argument was
9  about to finish when Healy told them to exit the van. See id. at 60:22-61:3.

10  One of the rangers told Blazquez that he (the ranger) believed that he heard yelling and that
11  Blazquez had hit Arcos. See id. at 62:10-14. Blazquez denied hitting or slapping Arcos. See id.
12  at 62:15-18. Blazquez admitted that he made a quick movement towards Arcos, after Arcos had
13  moved over to the driver's seat. See id. at 63:1-2, 81:25-82:6. Arcos had been wearing a hat and
14  putting things on the hat, and Blazquez did not like how Arcos looked with the hat on. See id. at
15  63:5-6, 64:12-19. Blazquez was frustrated and said something bad about how Arcos looked with
16  the hat on in order to annoy her, and then said that if she did not take the hat off, he would. See id.
17  at 63:4-64:19. Blazquez was standing over Arcos. See id. Arcos did not want Blazquez to take
18  her hat, and it took Blazquez three or four attempts to finally get the hat off of Arcos's head. See
19  id. When Blazquez finally got the hat, he threw it somewhere in the van. See id. Arcos
20  complained that Blazquez had taken her hat and then she got up, moved pass Blazquez by possibly
21  pushing him, and then went to a different place in the van. See TR3 at 2:12-25. Blazquez denied
22  raising his hand to Arcos, threatening Arcos in any way, pushing Arcos, or trying to overpower
23  Arcos. See TR2 at 66:1-12. Blazquez did not have the impression that Arcos was scared of him
24  or frightened of anything during their argument. See id. at 66:13-18. Blazquez could not recall if
25  Arcos flinched at any time. See id. at 66:19-20. Arcos did not have any injuries to her face that
26  morning, and there were no fresh marks on Blazquez's hand. See id. at 68:7-15.

27  *Renewed Rule 29 Motion & Closing Argument*
28  After Blazquez finished testifying, the Magistrate Judge entertained combined argument on

Blazquez's previously made Rule 29 motion and closing summations of the case. The Magistrate Judge found that the rangers acted in good faith, he had no basis to challenge their credibility, but he may not agree with each of the conclusions reached by the rangers. See id. at 23:8-19.

With respect to the Rule 29 motion, the Magistrate Judge adopted his tentative ruling regarding assault and granted the motion. See id. at 23:24-24:5. There were too many questions about what could have been seen, how clearly something was seen, and what was actually seen. See id. at 24:4-12. The Magistrate Judge denied the Rule 29 motion regarding disorderly conduct for the reasons argued by the United States. See id. at 25:11-13. The Magistrate Judge found that the evidence indicated Blazquez and Arcos were in a public area and were visible through the windshield. See id. at 25:13-18. The evidence indicated that the public could have seen arms flailing, could have heard arguing through the open door, and seen the van moving in reaction to the occupants' movements. See id. at 25:19-26:6. The Magistrate Judge held that sufficient evidence had been presented for a reasonable fact finder to conclude that Blazquez recklessly created a risk of public alarm. See id. at 26:9-12.

With respect to the verdict, the Magistrate Judge found Blazquez guilty of disorderly conduct. See id. at 27:13-15. In relevant part, the Magistrate Judge explained:

> . . . [Blazquez], who I found quite candid, testified that in the midst of this dispute he reached out and made contact with the victim [Arcos] and removed her hat. I believe that qualifies under the technical definition of assault.
>
> Now the assault charge . . . was dismissed before that evidence came in because I grant retroactively, nunc pro tunc the Rule 29 motion. So I cannot and will not convict the defendant on the assault charge.
>
> But those events which gave rise to that assault that he identified that indicates, in addition to what I've already said, in addition to the - - what was seen incredibly [sic] described as flailing about, loud shouting, clearly a dispute, clearly an argument in a public space on top of having the defendant reaching out in an unwanted fashion, obviously, and physically removing and touching an article of clothing on [Arcos's] head and removing it, that, to my mind, qualifies as an assault, and qualifies as a disturbance of the peace under the definition of the statute.

Id. at 26:19-27:12.

The Magistrate Judge then imposed a sentence of three days in custody with credit for time served, no probation, and a mandatory $10 assessment. See id. at 29:1-30:24.

7

**APPELLANT'S APPEAL**

**I.      Rule 29 Motion -- Consideration Of Evidence**

*Appellant's Argument*

Blazquez argues that the Magistrate Judge relied on testimony admitted after a ruling on the Rule 29 motion was reserved. Specifically, the Magistrate Judge relied on Blazquez's testimony that he removed a hat from Arcos's head in concluding that an assault and disturbance of the peace had occurred. Blazquez did not testify until after the government closed its case in chief. Pursuant to Rule 29(b), it was error to consider Blazquez's testimony.

*Appellee's Argument*

The United States argues that the evidence presented before Blazquez's Rule 29 motion was sufficient to support a conviction for disorderly conduct. Because sufficient evidence was produced prior to Blazquez making his Rule 29 motion, no evidence presented after the Rule 29 motion was improperly considered.

*Legal Standard*

Federal Rule of Criminal Procedure 29 permits a defendant to move for an acquittal after the government closes its evidence or after the close of all evidence. Fed. R. Crim. P. 29(a); United States v. Graf, 610 F.3d 1148, 1165 (9th Cir. 2010). Where a motion for acquittal is made before the close of all the evidence, the district court may reserve its ruling, proceed with trial, and render a decision before or after a verdict is reached. See Fed. R. Crim. P. 29(b); Graf, 610 F.3d at 1165 n.12. When a court defers ruling on a Rule 29 motion, appellate review of the sufficiency of the evidence is based on the state of the evidence as of the time the court reserved its ruling. See Fed. R. Crim. P. 29(b); United States v. Cruz, 554 F.3d 840, 844 n.4 (9th Cir. 2009).

*Discussion*

The Court is not convinced by the United States' argument. No evidence is cited in support of the argument, and Rule 29(b) clearly limits the evidence that a court may consider in deciding a deferred motion for acquittal. Furthermore, it is apparent that the Magistrate Judge relied heavily on Blazquez's testimony in ultimately finding him guilty of disorderly conduct. Nevertheless, a review of the record demonstrates that there was no error.

The Magistrate Judge recognized that he needed to decide the deferred Rule 29 motion "based upon the evidence that was before me at the time." T3 at 23:24-25. With respect to the assault charge, the Magistrate Judge adopted his prior tentative ruling and granted Blazquez's motion. See id. at 24:4-25:7. With respect to the disorderly conduct charge, the Magistrate Judge stated that he would deny the Rule 29 motion. See id. at 25:11-13. The Magistrate Judge focused on the testimony of the rangers and found sufficient evidence of disorderly conduct. See id. at 25:11-26:14. As part of his Rule 29 analysis, the Magistrate Judge did not discuss or cite to Blazquez's testimony. See id. It was only after the Magistrate Judge denied the Rule 29 motion that he discussed Blazquez's testimony. See id. The Magistrate explained, "so I deny the Rule 29 motion on the disorderly conduct charge. We have additional evidence . . . ." Id. at 26:13-14. It was from this point, and only this point in rendering his decision, that the Magistrate Judge discussed and relied on Blazquez's testimony. Thus, the record clearly demonstrates that when the Magistrate Judge denied the Rule 29 motion, he did not consider or rely on evidence that was presented after Blazquez made his motion. There was no violation of Rule 29(b).

## II.     Sufficiency Of The Evidence

*Appellant's Argument*

Blazquez argues that the Magistrate Judge erred by not granting his Rule 29 motion regarding disorderly conduct for several reasons. At the time of the Rule 29 motion, the United States failed to present any evidence of state of mind, nor had it demonstrated beyond a reasonable doubt that Blazquez had fought, threatened, or behaved violently towards Arcos. Instead, the Magistrate Judge relied on a finding that Blazquez disturbed the peace and committed an assault. However, neither disturbing the peace nor assault are elements of disorderly conduct. Moreover, there was no evidence that Arcos was placed in apprehension of imminent harmful or offensive contact, so there was no assault.

Blazquez also argues that there was insufficient evidence to support a conviction under § 2.34(a)(1). First, there was no evidence beyond a reasonable doubt that Blazquez intentionally, knowingly, or recklessly created a risk of public alarm because the evidence shows he took

9

deliberate steps to seclude the van in an area where there were no people or cars. Further, Blazquez did not believe that his voice was raised loud enough for anyone outside the van to hear. Second, there was no risk of public alarm because Blazquez's conduct was not public. Blazquez and Arcos remained in the van throughout their argument, and the van was parked away from the public. Unlike other cases in which conduct was found to be public, Blazquez did not engage in inherently shocking conduct or place himself in plain public view. All of the relevant conduct occurred inside of the van, and Healy admitted that he could not clearly see what was occurring until he entered the van. Third, Blazquez did not engage in violent or fighting behavior. Blazquez testified that he did not physically or verbally harm Arcos. Similarly, Phillipson could not see Blazquez engaging in fighting behavior or hear yelling, rather he only saw shadows and movement that he took to be indicative of a scuffle.

*Appellee's Argument*

The United States argues that the evidence was sufficient to support a conviction for disorderly conduct when Blazquez made his Rule 29 motion. The evidence showed that Blazquez was in a public area and he and Arcos were having a heated argument. The rangers testified that they observed physical exertion of force and loud yelling, which persisted even after Blazquez and Arcos exited the van. The rangers saw the van rock "back and forth," and Blazquez violently swung his arms as he loomed over Arcos. Because a reasonable fact finder could view this evidence as establishing the necessary elements for disorderly conduct, Blazquez's Rule 29 motion was properly denied.

The United States also argues that the evidence as a whole was sufficient to support a conviction for disorderly conduct. First, Blazquez acted recklessly in a public place because his conduct occurred in an open vehicle on a public roadside in a national park. The area where the van was parked was accessible to the public, and the public had an unobstructed view of Blazquez through the sprawling front window and the wide open side door. Second, the mens rea requirement of disorderly conduct is met because when conduct occurs in a public place, there is always a risk that other persons could pass by and become alarmed. By engaging in prohibited conduct in a national park, Blazquez acted recklessly. Third, Blazquez engaged in threatening

behavior, fighting, or violence because he was loudly yelling at Arcos and swung his arms at her while standing over her. The rangers testified that Blazquez yelled and rapidly reached toward Arcos, which caused Arcos to recoil. The rangers saw Blazquez loom over Arcos and swing his arms toward her while she cowered on the floor. These actions show an altercation, a communication of an intent to cause harm, and an unjust exercise of force.

*Legal Standard*

1. Sufficiency of the Evidence

"Following a bench trial, a district court's conclusions of law are reviewed de novo and findings of fact are reviewed for clear error." United States v. Temkin, 797 F.3d 682, 688 (9th Cir. 2015). The sufficiency of the evidence to support a conviction following a bench trial is reviewed de novo. United States v. Jiang, 476 F.3d 1026, 1029 (9th Cir. 2007). The standard for reviewing the sufficiency of the evidence to support a criminal conviction is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Temkin, 797 F.3d at 688; Jiang, 476 F.3d at 1029. This standard is "highly" or "exceedingly" deferential to the verdict. United States v. Rosen, 716 F.3d 691, 702 (2d Cir. 2013); United States v. Lukashov, 694 F.3d 1107, 1118 (9th Cir. 2012). All reasonable inferences that may be drawn from the evidence are to be drawn in the government's favor. United States v. Heuer, 4 F.3d 723, 731 (9th Cir. 1993); United States v. Reese, 775 F.2d 1066, 1071 (9th Cir. 1985). The reviewing court is required to "respect the exclusive province of the fact-finder to determine the credibility of the witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the fact-finder resolved all such matters in a manner which supports the verdict." United States v. Khatami, 280 F.3d 907, 910 (9th Cir. 2002). In bench trials, "the judge weighs the evidence, determines the credibility of the witnesses, and finds the facts," and the "court may select among conflicting inferences to be drawn from the testimony." United States v. Bales, 813 F.2d 1289, 1293 (4th Cir. 1987); see United States v. Stanton, 501 F.3d 1093, 1100-01 (9th Cir. 2007); Khatami, 280 F.3d at 910.

A motion for acquittal under Rule of Criminal Procedure 29 "is reviewed on a sufficiency

of the evidence standard." Graf, 610 F.3d at 1166; United States v. Stoddard, 150 F.3d 1140, 1144 (9th Cir. 1998). Therefore, a Rule 29 motion should be denied if, "viewed in the light most favorable to the government, [the evidence] would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." Graf, 610 F.3d at 1166.

    2.    Disorderly Conduct

By regulation, a person "commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person commits any of the following prohibited acts: (1) Engages in fighting or threatening, or in violent behavior." 36 C.F.R. § 2.34(a)(1). Disorderly conduct requires a "public component to the proscribed behavior," and the word "'public' was intended to modify not only alarm, but also nuisance, jeopardy, and violence." United States v. Taylor, 258 F.3d 1065, 1068 (9th Cir. 2001). The Ninth Circuit has approved of the Model Penal Code's definition of "public," which is: "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways . . . ." United States v. Coutchavlis, 260 F.3d 1149, 1154 (9th Cir. 2001); United States v. Albers, 226 F.3d 989, 1139 (9th Cir. 2000). For purposes of § 2.34(a), a person acts "recklessly" if he deliberately disregards a substantial and unjustifiable risk. See Coutchavlis, 260 F.3d at 1155; Albers, 226 F.3d at 1139. The common understanding of "disorderly conduct" incorporates behavior "that tends to disturb the public peace, offend public morals, or undermine public safety," and "incorporates the common law offense of breaching the peace, which takes place 'when either an assault is committed on an individual or public alarm and excitement is caused.'" United States v. Gonzalez-Mancilla, 551 Fed. Appx. 128, 134 (5th Cir. 2014) (internal citations and quotations omitted).

*Discussion*

    1.    Rule 29 Motion

In denying Blazquez's Rule 29 motion, the Magistrate Judge found the United States had presented evidence that Blazquez and Arcos were in a public place, the rangers observed violent or fighting behavior, and a risk of public alarm or nuisance was recklessly created. See TR3 at 25:11-26:14. After reviewing the rangers' testimony (because Blazquez had not yet testified when

the Rule 29 motion was made), and viewing the evidence in the light most favorable to the United States, see Graf, 610 F.3d at 1166, the Court agrees with the Magistrate Judge's conclusions and denial of the Rule 29 motion.

      The rangers' testimony was sufficient to meet each of the elements of § 2.34(a)(1).  First, Yosemite National Park is a public place, and the road on which Blazquez's van was parked is a public place.  See Coutchavlis, 260 F.3d at 1154; TR1 at 68:21-69:9; see also Albers, 226 F.3d at 995.  Blazquez and Arcos were both visible to the public (passing cars, joggers, or pedestrians) when they were sitting in the front of the van.  See TR1 at 16:24-17:2, 64:12-15.  Second, Healy saw through the van's windshield what appeared to be flailing arms between the two occupants, and the conduct was sufficient to cause the van to move back and forth.  See id. at 17:3-18:25.  Healy thought the van's occupants might be fighting based on what he saw.  See id. at 51:10-16, 74:10-12.  Fighting is conduct that is prohibited under § 2.34(a)(1).  Third, there is no dispute that fighting in public would cause a public alarm or a public nuisance.  Fourth, although it was the driver who appeared to be the aggressor, see id. at 17:5-7, and the rangers were unable to identify whether Blazquez or Arcos was the driver, see id. at 53:1-15, 74:21-25, Healy's testimony suggests a type of "mutual combat" between the driver and the passenger.  See id. at 17:3-18:25; TR3 at 26:1-7.  Thus, it appeared that Blazquez was fighting.  Finally, there was sufficient evidence of recklessness.  It is entirely reasonable to infer that Blazquez and Arcos realized that they were on a public road, that other cars had been or might be traveling on the road, see TR1 at 15:19-22, 64:12-15, and that they were visible to the public through the windshield.  Furthermore, the side door of the van was open, and a person passing by could have heard or seen through the open door what was occurring.  See id. at 20:11-17.  Despite these considerations, Blazquez and Arcos engaged in fighting behavior.  The evidence was sufficient to infer a reckless disregard of causing public alarm or nuisance.  Cf. United States v. Bucher, 375 F.3d 929, 934 (9th Cir. 2004) (holding that a culpable *mens rea* can be shown circumstantially from the surrounding circumstances); Coutchavlis, 260 F.3d at 1155 (finding a violation of § 2.34(a)(1) when the driver of a moving vehicle on a road in Yosemite grabbed the passenger's arm and punched the windshield of the car hard enough to cause a pre-existing crack to lengthen).

Based on the above, there was sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that Blazquez had violated § 2.34(a)(1). Therefore, the Magistrate Judge correctly denied Blazquez's Rule 29 motion.

2.  Verdict

From the explanation of the verdict, it is apparent that the Magistrate Judge made at least the following findings of fact, either expressly or impliedly: (1) the van was parked on the side of a park road, (2) the rangers saw the occupants of the van moving and flailing their arms about in the front/cab of the van, (3) Blazquez reached out and took Arcos's hat from her head, despite Arcos attempting to prevent him from doing so, (4) the incident with the hat occurred while Blazquez and Arcos were in or near the cab of the van, and (5) Blazquez's actions were visible to the public. There is sufficient evidence to support each finding of fact.

As discussed above, the rangers testified that Blazquez's van was parked on the side of the road near Stoneman Meadow in Yosemite. See TR1 at 16:1-25, 68:21-69:9. Healy directly testified that he saw through the van's windshield rapid movement of arms by the van's occupants and possible pushing, which shows that the conduct of the van's occupants was visible to the public.[5] See id. at 16:21-18:8. Blazquez testified that he took the hat from Arcos after several attempts, and that Arcos did not want Blazquez to take the hat from her. See TR2 at 63:1-64:19. Blazquez also testified that the rapid movements he recalled occurred when he tried to take the hat, and Arcos was sitting in the driver's seat while he was to the side of the driver's seat, i.e. they were in or near the cab of the van. See id.; TR3 1:4-21. In light of the trial testimony, none of the Magistrate Judge's findings of fact are clearly erroneous. See Temkin, 797 F.3d at 688.

With respect to the elements of § 2.34(a)(1), first, the Magistrate Judge correctly concluded that Blazquez's conduct occurred in public. Conduct occurring on a public roadway in a national park is conduct that is occurring in a public area. Coutchavlis, 260 F.3d at 1155. Like the conduct in *Coutchavlis*, Blazquez's actions occurred in or near the cab of the van, and like *Coutchavlis*, the public could see what was occurring in the cab of the van through the windshield.

---

[5] It is true that Healy admitted that there was a glare from the morning sun on the van's windshield. See TR1 at 18:13-25. However, the Magistrate Judge was entitled to credit Healy's testimony that he could see still see inside the van, and see arms and torso's moving rapidly. See Stanton, 501 F.3d at 1100-01; Bales, 813 F.2d at 1293.

14

The Court does not find Blazquez's reliance on *Taylor* or *Schaffer* persuasive. In *Taylor*, the alleged disorderly conduct occurred in the presence of a Yosemite ranger while the ranger was inside of Mr. Taylor's cabin. See Taylor, 258 F.3d at 1066. In *Schaffer*, the alleged disorderly conduct occurred in the presence of a Yosemite ranger who was inside an enclosed kitchen area that was shared by two cabins. See United States v. Schaffer, 2010 U.S. Dist. LEXIS 11940, *2-*7 (E.D. Cal. Jan. 29, 2010). The conduct in both of these cases was found not to have occurred in public, despite the quintessential public nature of Yosemite National Park. See Taylor, 258 F.3d at 1068-69; Schaffer, 2010 U.S. Dist. LEXIS 11940 at *13-*19. In both cases, the conduct occurred in an area that had been separated from the general public and set aside for temporary private use. That is, the public no longer had an unfettered right to go into either Taylor's cabin or Schaffer's kitchen. See Schaffer, 2010 U.S. Dist. LEXIS 11940 at *17-*19. Here, the public did not have a right to go into Blazquez's van. However, the public had every right to drive, walk, or jog around and near the van because the van was on a public road in a national park, and Blazquez and Arcos's conduct was visible through the windshield and through the open side door. See TR1 at 16:21-18:25, 21:11-24. Blazquez engaged in conduct in a public area.

Second, in terms of the conduct itself, the Magistrate Judge accepted both the rangers' testimony regarding what they witnessed, and Blazquez's testimony regarding Arcos's hat. See TR3 at 23:8-19, 26:19-23. In relevant part, Blazquez testified:

> . . . [Arcos] was wearing a hat that I just didn't like her – I mean that was a big thing in the moment for me, to – you know, to go and say something bad about her. So I did take it off of her head and . . . or at least I tried to take it off . . . and I think I did. You know.
>
> Sorry. I did try to get the hat off her head, at least I think I did at the end, and I know it's not a nice thing, but it was just something to get annoyed and it wasn't that awful or anything, but I just did.
>
> She was sitting and I was standing, and I went and grabbed it. And she didn't want to, so I did – maybe it took three or four times so – or I don't know, and I did take it at the end. And then I did throw it somewhere else.
>
> . . . .
>
> Well it's a personal thing, but you know, she was wearing things on the hat that I didn't like at all, so I been like – like not being nice to her for a while about – that she looked like a person from – I don't know, what is the truth, from Romania, and she didn't look nice and she didn't look beautiful to me so I'd been saying and in

15

this moment I – it was this hat and I said well if you don't take it off, I take it off. TR2 at 63:5-64:19. Blazquez testified that he did not do this to irritate Arcos on purpose, but did so because he was frustrated with Arcos. Id. at 64:6-9. After Blazquez took Arcos's hat, Arcos complained and moved to a different area of the van. TR3 at 2:12-21.

The conduct proscribed by § 2.34(a)(1) is fighting, threatening behavior, or violent behavior. See 36 C.F.R. § 2.34(a)(1). The parties have not cited any cases that have defined the terms "fighting," "threatening behavior," or "violent behavior." As relevant here, Black's Law Dictionary has defined the term "fight" in part as a "hostile encounter, affray, or altercation; a physical or verbal struggle for victory." Black's Law Dictionary p. 627 (6th Ed. 1990). The terms "fight" and "fighting" are commonly used and understood in society, and the Black's Law Dictionary of "fight" comports with that common understanding.

Healy's testimony about what he witnessed in the front of the van through the windshield is consistent with "fighting." Healy described sudden movement, arms rapidly moving, torso's moving along with arms, possible shoving, and the van rocking from side to side. See TR1 16:21-18:8. In fact, Healy asked Phillipson expressly if there were people fighting in the van or if someone just got hit. See id. at 19:1-15, 51:10-16, 74:7-12. Furthermore, Blazquez's testimony confirms that there was an affray occurring. Blazquez testified that the sudden movements that he recalls were multiple attempts to take Arcos's hat from her head. See TR2 at 63:1-64:19. Arcos did not want Blazquez to take her hat. See id. Given the movements described by Healy and Blazquez's admission that it took him three or four attempts to get the hat, Arcos appears to have engaged in physical conduct to prevent Blazquez from taking her hat.

Viewed in the light most favorable to the United States, see Temkin, 797 F.3d at 688, Healy and Blazquez's testimony can reasonably be viewed as describing a mutual physical struggle between Blazquez and Arcos over a hat that was on Arcos's head.[6] The struggle included

---

[6] Blazquez characterizes what occurred as him "plucking" Arcos's hat from her and teasing her, or engaging in an "intimate act." See Reply Brief at 6:16-18. This is not an unreasonable interpretation of the case. However, it is not the interpretation that the Magistrate Judge made. See TR3 at 28:3-11. Considering Ranger Healy's testimony and Blazquez's testimony regarding the couple's ordeals and frustrations during their vacation, the Magistrate Judge could reasonably conclude that something more serious than just playful teasing had occurred, albeit something that was not a "serious crime." Id. As the trier of fact, the Magistrate Judge was permitted to interpret the evidence in the manner that he did. See Stanton, 501 F.3d at 1100-01; Khatami, 280 F.3d at 910; Bales, 813 F.2d at 129.

16

rapid movements of arms and bodies to such a degree that the van rocked.  Further, knocking the hat off of someone's head, like spitting on a person, is offensive conduct or touching that can constitute common law assault and battery.  See United States v. Watts, 798 F.3d 650, 654 (7th Cir. 2015); United States v. Llewellyn, 481 F.3d 695, 697-98 (9th Cir. 2007).  Therefore, the evidence showed fighting or assaultive conduct by Blazquez that occurred in public.  The Magistrate Judge was not mistaken in concluding that assaultive conduct in public can constitute disorderly conduct.  See Gonzalez-Mancilla, 551 Fed. Appx. at 134.

Third, with respect to recklessness, as discussed above, Blazquez's van was parked in an inherently public place.  The rangers' testimony shows that, while not a steady stream, there were occasional cars, joggers, and pedestrians passing by the van.  See TR1 at 15:19-22, 64:12-15.  It is true that Blazquez testified that he chose to park next to Stoneman Meadow because it was sunny, quiet, and not crowded.  See id. at 51:18-23.  However, Blazquez also testified that he was only two minutes away from the full and crowded campground, and critically that he had seen other cars occasionally pass by the meadow that morning.  See TR2 at 51:13-53:2.  Considering that Blazquez's conduct occurred in the van's cab, and Blazquez's awareness that members of the public were nearby and that some had even driven by him, it can be reasonably inferred that Blazquez acted with a reckless disregard of a substantial risk of causing public alarm when he fought with Arcos over the hat in the cab of the van.  See Bucher, 375 F.3d at 934; Coutchavlis, 260 F.3d at 1155.

In sum, under the deferential standard for reviewing the sufficiency of the evidence, see Rosen, 716 F.3d at 702; Lukashov, 694 F.3d at 1118, there was sufficient evidence to support Blazquez's conviction under § 2.34(a)(1).  Temkin, 797 F.3d at 688; Coutchavlis, 260 F.3d at 1155.

## **CONCLUSION**

The Court does not find error with respect to the three grounds of review raised by Blazquez.  First, there was no error in terms of the evidence considered by the Magistrate Judge in ruling on Blazquez's Rule 29 motion.  The Magistrate Judge relied only on evidence that had been

adduced before Blazquez made his Rule 29 motion.  Second, the Magistrate Judge correctly denied Blazquez's Rule 29 motion with respect to disorderly conduct.  The testimony from the rangers, as well as the reasonable inferences that stem therefrom, was sufficient for a reasonable trier of fact to find disorderly conduct.  Third, and finally, the testimony of the rangers and the testimony of Blazquez were sufficient to establish disorderly conduct under 36 C.F.R. § 2.34(a)(1).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Appellant's grounds for review are DENIED and the judgment of the Magistrate Judge is AFFIRMED.

IT IS SO ORDERED.

Dated: __November 10, 2015__         _____
                                      SENIOR DISTRICT JUDGE